CHARLES R. JONES, Judge.
 

 |,The Appellant, Louisiana Construction & Industry Self Insurance Fund (LCI), seeks review of the judgment of the Office of Worker’s Compensation (OWC), holding that LCI had to defend Nunez Construction, LLC (Nunez), and that LCI could not deny Nunez insurance coverage. We now reverse and remand, finding that the OWC erred in granting declaratory relief to Nunez, and in failing to render a decision on the confirmation of the motion to confirm default judgement.
 

 LCI was the insurer of Nunez when Gary Partello alleges that he was injured in a work-related accident on or about May 7, 2007, while employed by Nunez through a sub-contractor, Carl E. Woodward, LLC. (CEW). Mr. Partello filed a claim for compensation on October 1, 2007, in the OWC in the Parish of Orleans. Mr. Par-tello later amended his claim and named CEW and LCI as defendants.
 

 LCI subsequently filed a cross-claim (re-conventional demand) against Nunez alleging that it did not have a duty to defend, and that it was entitled to indemnification from Nunez because of the actions of Nunez. LCI further alleged that Nunez failed to comply with the agreed membership terms of LCI, to the |2prejudice of
 
 *693
 
 LCI, and that Nunez had to reimburse any amounts LCI may be required to pay.
 

 Nunez was properly served with the cross-claim, but failed to make an appearance in court. LCI obtained a preliminary default judgment against Nunez, and the motion to confirm the preliminary default was heard in June of 2010. Nunez did not appear at the hearing, but CEW did appear and fully participated in the hearing. At the hearing, LCI presented the OWC with testimony from a third party agent from Avizent, Yvonne Rosen, regarding the procedures and policies required to be followed by each member, and the actions and failure to comply by Nunez regarding this particular incident.
 

 In the confirmation hearing for the preliminary default against Nunez, LCI orally requested to expand the pleadings to determine the issue of coverage based on the testimony of Ms. Rosen. CEW objected to the expansion of the pleadings and the OWC sustained the objection. However, the OWC rendered a declaratory judgment finding that LCI may neither avoid coverage nor a defense for its insured, Nunez. LCI timely appealed the judgment of the OWC.
 

 LCI asserts two assignments of error: 1) that the OWC erred in finding that LCI owed a defense and coverage to Nunez because this controversy was not properly before the court based on La. C.C.P. arts. 862 and 1708, since the request to expand the pleadings of LCI were denied; and 2) the OWC erred in failing to confirm the default judgment holding that LCI is entitled to indemnification from Nunez Construction, LLC, to the extent that the actions and failings of Nunez have prejudiced LCI, for any amounts it may be made to pay pursuant to La. C.C.P. arts. 1701 and 1702.
 

 | sIn the first assignment of error, LCI argues that the OWC erred in finding that LCI owes a duty to defend and cover Nunez because the OWC denied the oral request during the preliminary hearing to expand the pleadings to include coverage. LCI argues that the OWC unilaterally went beyond the scope of the pleadings in finding that LCI owed a defense and coverage to Nunez which were not before the OWC.
 

 “In workers’ compensation cases, the appropriate standard of review to be applied by the appellate court to the OWC’s findings of fact is the ‘manifest error-clearly wrong* standard.”
 
 Dean v. Southmark Const.,
 
 2003-1015, p. 7 (La.7/6/04), 879 So.2d 112, 117 (quoting
 
 Brown v. Coastal Construction & Engineering, Inc.,
 
 96-2705 (La.App. 1 Cir. 11/7/97), 704 So.2d 8, 10). Additionally the findings of the OWC will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety.
 
 Alexander v. Pellerin Marble & Granite,
 
 93-1698, p. 7 (La.1/14/94), 630 So.2d 706, 710.
 

 In the present case, the OWC was presented with testimony from Ms. Rosen regarding the policy and procedures for injuries to be covered by the membership in LCI, and the court was also presented copies of the policy as well as the Agreement signed by Nunez regarding these procedures and the consequences of not complying with various provisions within the policy and the Agreement. Part D of the Agreement states:
 

 ... A member accepts and agrees to be bound in solido for all obligations of Louisiana Construction & Industry Self Insurers Fund contained in the Indemnity Agreement, and any and all amendments thereto adopted or which may hereafter be adopted by the Board of Trustees of the Fund.
 

 1 ¿Parts W and X state in part:
 

 w) It is acknowledged, accepted and understood that all claims will be report
 
 *694
 
 ed immediately, (within 48 hours upon a member notification), to the fund or its designee. Failure to report your claims immediately that result inprejudicing [sic] the fund in any way the member will be held liable and responsible to reimburse the fund for all cost related to the claim.
 

 x) It is acknowledge, accepted and understood that if any member in any way prejudices the Fund due to its failure to fully cooperate and/or interferes with the Fund and its designee on any claims investigation for works? compensation benefits for its covered employees the Member will be held liable and responsible to reimburse the fund for all cost and damages related to the claim.
 

 The terms of the policy summarized in the Agreement are clear and unambiguous regarding the duties of Nunez for claims that arise where LCI must investigate and provide coverage in the event of Workers’ Compensation litigation. The Louisiana Civil Code provides that if the words of the contract are clear, unambiguous, and lead to no absurd consequences, the court need not look beyond the contract language to determine the true intent of the parties. La. C.C. Art. 2046. “Each provision in a contract must be interpreted in the light of the other provisions so that each is given the meaning suggested by the contract as a whole.” La. C.C. Art. 2050. Whether or not a contract is ambiguous is a question of law.
 
 La. Ins. Guar. Ass’n v. Interstate Fire & Cas. Co.,
 
 93-0911, p. 11-13 (La.1/14/94), 630 So.2d 759, 764. The contract in this case was clear and unambiguous where the terms of the policy and the duties of Nunez were agreed upon with a signature by the company. The OWC erroneously disregarded the Agreement and Policy presented by the Appellant, therefore the judgment granted in favor of Nunez was manifestly erroneous or clearly wrong.
 

 IfiThe second assignment of error LCI asserts is that the OWC erred in failing to confirm a default judgment holding that the LCI is entitled to indemnification from Nunez, to the extent the actions and failings of Nunez have prejudiced LCI, for any amounts to be paid. LCI argues that the terms of the Agreement were unambiguous and clear which Nunez had agreed and signed on as being a member of LCI, and that Nunez knew what the consequences were of violating certain terms specified in the agreement. In the agreement each member is obligated to report any accidents to LCI to ensure that LCI can properly investigate the accident and handle the claim. Ms. Rosen, on behalf of Avizent, also testified that the failure of a member to timely report an accident would result in prejudice to LCI. For instance, Ms. Rosen testified that LCI would be limited in time to question witnesses and investigate the accident itself when a member delays notifying LCI. She further testified that LCI would be unable to monitor and/or coordinate the medical treatment of the claimant.
 

 LCI argues that these terms that were agreed to by Nunez are also within the LCI Insurance Policy and the LCI Membership Acknowledgement and Indemnity Agreement. The obligation of the insured to cooperate with the defense of the claim is specified in the Insurance Policy and the Agreement. Despite the language within both of the documents, Nunez did not report the accident until nine months after the accident and after LCI did not receive notice of the claim. Ms. Rosen testified that a representative of Avizent attempted to contact Nunez on numerous occasions by phone and mail, and never received a response. Thus, Nunez failed to cooperate and hampered the defense of the claim by not providing the personal file of Mr. Par-tello or any of the requested information,
 
 *695
 
 and Ms. Rosen could not move forward with its investigation of the alleged accident. Additionally, Nunez entered |fiinto an agreement with CEW wherein Nunez agreed to indemnify CEW, which would also negatively impact LCI in the event of an adverse ruling.
 

 LCI also asserts that a breach of these terms of the agreement could result in the denial of coverage, in particular when the insurer is prejudiced, and that the duties of the insured to cooperate with the insurer are implied in the insurance policy itself.
 

 The OWC was silent regarding the second assignment of error which was the issue initially before the court. Therefore, we remand this issue back to the OWC for further review consistent with the findings of this court.
 

 DECREE
 

 For the reasons stated above, we reverse that part of the judgement wherein Louisiana Construction & Industry Self Insurance Fund is held liable to defend and provide coverage to Nunez Construction, and we remand for further review by the Office of Workers’ Compensation consistent with the findings of this court.
 

 REVERSED AND REMANDED